No. 24,449.

DEWEY WRAGE, *Appellee,* v. J. J. KING, *Appellant.*

SYLLABUS BY THE COURT.

1. AUTOMOBILE ACCIDENT—*Running Down Pedestrian—Certain Exclamation by a Nearby Bystander Not Admissible in Evidence.* In the trial of an automobile accident case, a contested issue was whether plaintiff suddenly leaped from the sidewalk and ran in front of defendant's car. Defendant offered to prove one person said to another, "See that fellow jump in front of that car." Under circumstances stated in the opinion it is held the utterance was not classifiable as a "spontaneous exclamation," admissible by virtue of exception to the hearsay rule.

2. SAME—*Requested Instruction as to Comparative Value of Positive and Negative Evidence Properly Refused.* The evidence considered, and *held,* a requested instruction on the subject of comparative value of positive and negative testimony was properly refused.

3. SAME—*Instruction Given Correctly Stated the Law.* An impugned portion of one of four instructions given the jury on the subject of caution to be exercised by a pedestrian about to cross a city street, considered, and held to be unexceptionable in itself, and to be entirely appropriate as a feature of the whole charge.

4. SAME—*Findings of Jury and Rulings of Court Thereon Considered.* The jury returned findings of fact favorable to plaintiff and a general verdict in his favor. The court set aside a finding that plaintiff left the sidewalk in an ordinary walk, and approved the other findings and the general verdict. *Held,* the finding set aside was rendered immaterial by other findings; the approved findings and verdict were not vitiated by the jury's mistake; and misconduct or passion or prejudice on the part of the jury was not manifested.

Appeal from Shawnee district court, division No. 1; JAMES A. McCLURE, judge. Opinion filed November 10, 1923. Affirmed.

*Joseph G. Waters, Edward Rooney,* and *John C. Waters,* all of Topeka, for the appellant.

*J. J. Schenck, J. E. Addington,* and *Frank Doster,* all of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages sustained by plaintiff when he was struck by defendant's automobile. Plaintiff recovered, and defendant appeals.

The accident occurred on the Melan bridge in Topeka, which extends from north to south, and is approximately 1,000 feet long. The middle of the bridge is nine feet higher than the ends. A walk for foot passengers extends along the east side of the bridge. The accident occurred on the northerly portion of the bridge, where the roadway was narrowed by material for repair work and a barricade placed on the west side. While proceeding southward along the walk, plaintiff deemed it necessary to cross the roadway for a business purpose. While going west, plaintiff looked toward the south for approaching vehicles, and saw none. When he reached the middle of the roadway, he turned his attention to traffic from the north, and found his progress obstructed by an approaching truck. While waiting for the truck to pass, defendant's automobile struck him, and inflicted severe and permanent injuries.

The jury found defendant was negligent because, as they stated in a special finding, he was driving at a reckless rate of speed, about twenty-five miles per hour. There was conflict in the evidence on the subject, which it is not necessary to review. Taking into account certain physical facts and the testimony of some disinterested witnesses, the finding appears to be in accord with the weight of the evidence. In any event it was amply supported. Plaintiff was acquitted of contributory negligence. The prudence of his conduct was a much closer question. His testimony showed compliance with every requirement of due care, and clearly fixed responsibility for the accident on defendant. He was corroborated by credible testimony, the trial court has approved the verdict, and controversy over the facts is not renewable here.

The sidewalk was elevated a step above the roadway, and one of the vigorously contested issues was whether plaintiff suddenly leaped from the sidewalk and ran in front of defendant's car. There was evidence on both sides. T. B. Massey was called as a witness for defendant. While Massey was going north on the sidewalk, defendant's car passed him about the crest of the bridge, which was 300 feet south of the place where the accident occurred. Massey said he was walking at a "pretty good hickory," going to dinner.

When he had gone ten or fifteen feet after the car passed him, the accident occurred, but he did not see it. He saw plaintiff leave the walk, but gave little attention to him, and it seemed to him the car stopped suddenly. With him was a man named Thomas. Thomas spoke about it, said something to him, and in consequence of what Thomas said, he looked up. Thomas just spoke to him, and it seemed plaintiff had just gone off the walk, and about that time defendant stopped his car. It happened "right quick." Defendant offered to show by Massey that Thomas said, "See that fellow jump in front of that automobile," but he was not permitted to do so.

The statement was offered as a spontaneous exclamation, admissible by virtue of an exception to the hearsay rule. Dean Wigmore correctly states the essence of the hearsay rule to be that when human utterance is offered as evidence of truth of the fact asserted in the utterance—in this case truth of the fact plaintiff did jump in front of the automobile—credit of the person making the utterance becomes the basis of inference. Therefore, the assertion of fact can be received only when made on the witness stand, where credit of the person can be tested by cross-examination. (3 Wigmore on Evidence, 2d ed., § 1768.) Certain exclamations are admitted in evidence by way of exception to the hearsay rule. Such exclamations need not be by actors in the event to which the utterances relate, but may be the utterances of bystanders having opportunity to observe personally the matters concerning which they cry out. The basis of the exception is stated by the learned author as follows:

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock.

"There must be some *shock, startling enough* to produce this nervous excitement and render the utterance spontaneous and unreflecting." (3 Wigmore on Evidence, 2d ed., §§ 1747, 1750.)

There is no evidence that Thomas saw the automobile strike plaintiff, or had dreadful apprehension it would strike him. There is no evidence Thomas was under stress of nervous excitement or strong emotion, or was at all shocked by what he saw. So far as the evidence discloses, he was merely an observer of a quick movement which interested him, and of which he spoke to his companion. Therefore, the utterance was properly excluded. Besides that,

Thomas was nearly one hundred yards away. It is not certain he had accurate apprehension of what took place, and there is no guaranty that what he said was not, after a common mode of speech, a superlative interpretation of his impression.

Defendant requested the court to give an instruction relating to the comparative value of positive and negative testimony, which was refused. The requested instruction was prefaced as follows:

"Defendant has introduced evidence of statements made by the plaintiff immediately after the collision and before he was removed to the hospital, to the effect that the defendant was not to blame, or was not at fault. Plaintiff then introduced testimony of some witnesses who said they were present and that if any statements had been made by plaintiff they could have heard them, but that they heard no statements."

When telling about the accident, plaintiff said all he could remember after the automobile struck him was, he was carried to the sidewalk, was held by some one he did not know until the ambulance came and took him to the hospital, was not able to recognize persons about there after he was struck, and after removal knew nothing until the next morning.

Walter Woods, a witness for plaintiff, arrived at the scene of the accident after plaintiff had been carried to the sidewalk, and remained until plaintiff was taken to the hospital. He saw defendant, but did not remember just what he was doing, except he took a few names. The witness saw a policeman, but he knew only one person in the crowd which gathered. He said he did not hear plaintiff speak while he was on the sidewalk. Plaintiff was groaning and in great pain.

F. E. Jordan, a policeman, arrived at the scene of the accident just as plaintiff was carried to the sidewalk. He was not interrogated concerning statements made by plaintiff before he was placed in a car to be taken to the hospital. He testified on behalf of plaintiff as follows:

"I held him in my arms from there plumb out to the hospital; he did not talk; I talked to him, but he never uttered anything; I could not get anything out of him; I think he was unconscious; he did not understand what I said; was in that condition all the way to the hospital; Christ's hospital; he appeared to be in great agony; heard him groan; that continued all the way to the hospital; every time the car jolted he would groan and holler."

The attention of no witness for plaintiff was called to any specific statement plaintiff might have made or which might have been heard if made.

Defendant was the first witness in his own behalf, and in his testimony introduced the subject mentioned in the request for an instruction. W. S. McCaslin was defendant's chief witness as to the details of the accident, was the first person, after defendant, who reached plaintiff after he was injured, and helped carry plaintiff to the sidewalk. On cross-examination he testified as follows:

"Mr. King and myself I think were the first two there; did not hear the boy say a word; don't remember hearing King ask him, 'You did not see my car' and he said 'No.' I might have remembered it if he had said it; I was the first one there after King got there; he made no statement of that kind to my knowledge."

E. C. Stoll, a policeman who arrived at the scene of the accident after plaintiff had been carried to the sidewalk, testified for defendant as follows:

"I took a full report, written report, and turned it in to my superior officer. I asked Mr. Wrage how the accident happened, and he says to me—he says— No, I don't know whether he mentioned Mr. King's fault or just his own fault; he says to me it wasn't his fault, or it was my fault, something to that effect, but I did not just get who he had reference to; I could not tell whether he meant King or himself. . . . I know for sure he said it wasn't his fault, or Mr. King's fault—simply he said those words, but I did not just get whether it was his own fault or whether it was Mr. King's fault; I don't know now which he meant; when I first saw the boy he was suffering; he was groaning."

Earl Butts testified for defendant on direct examination as follows:

"Mr. King, he says, 'Poor boy,' I believe that is what it was—'It wasn't my fault,' and the boy said 'No': that is my recollection of that conversation; nothing else said that I recall."

W. P. Kimball, a witness for defendant, drove by the place of the accident while plaintiff was still lying in front of defendant's car, and then returned. On cross-examination he testified as follows:

"When I came back he was on the sidewalk; did not hear any conversation from boy; I think he said 'Oh,' or something like that when they put him in the car; I heard him groan, but did not hear him talk to anybody; . . . My best judgment is he said once, 'You are hurting me.' There were several men there at the time; those men that were putting him in the conveyance; Mr. King was there; a colored policeman I think; they had the same chance I did to hear him say it."

The last witness for defendant was Massey, whose testimony has been referred to in connection with another subject. The abstract then contains the following:

"Thereupon the defendant rested his case. Thereupon the plaintiff rested his case."

The result is, the stated basis for the requested instruction did not exist, and no reason for giving the instruction is apparent.

Defendant complains of a portion of an instruction given the jury to the effect a pedestrian is not necessarily negligent if he start to cross a street without looking or listening to ascertain approach of an automobile. The instruction became immaterial because the jury found plaintiff did look before he started across the bridge. However, the instruction was one of four, which covered fully the subject of caution to be exercised by a pedestrian about to cross a street. Considered by itself, the instruction was correct because the word "necessarily" was used; and considered as a whole, the instructions were complete, easily comprehended by the jury, and accurate in point of law.

The jury returned the following findings:

"2. How many feet was the right side of King's car from the east curb of the bridge at the time of the collision? A. Between 4½ and 5 feet.

"3. Where was plaintiff at the time he was struck by defendant's car, with reference to the center of the traveled way of said bridge? A. Near the center of the traveled way of bridge, about 10 feet from east curb.

"7. In what manner did plaintiff leave the east sidewalk to cross the bridge at the time in question? A. Ordinary walk.

"8. Did plaintiff look towards the south to see whether a car was approaching at the time he left the sidewalk or thereafter before the collision occurred? A. Yes.

"9. Did plaintiff see King's car before they collided? A. No.

"10. Was there anything to prevent plaintiff seeing King's car from the time it came over the crest of the bridge until it struck him? A. No.

"12. How far distant was defendant's car at the time plaintiff left the east sidewalk to cross the bridge to the west side? A. About 450 feet.

"15. Was plaintiff standing still or in motion at the time of the collision? A. Standing still."

The court set aside the 7th finding. Defendant contends the false conception expressed in the finding necessarily influenced the jury in reaching all its conclusions.

Whether plaintiff left the sidewalk with a jump or on a run, or in an ordinary walk, was not material, in view of the other findings. When plaintiff left the sidewalk, defendant's car was 150 feet beyond the crest of the bridge. The city ordinance read to the jury in the court's instructions required vehicles to keep as near as possible to the right-hand curb, which defendant did not do. Whatever the character of plaintiff's movement when he left the sidewalk, he stopped near the center of the traveled way, where he should have been free from danger from northbound cars. He was then threatened by southbound traffic only and, while standing still

until a truck passed by, was run down by defendant's car, which came over the crest of the bridge and down the north incline in approximately 12½ seconds from the time plaintiff left the sidewalk. The city ordinance read to the jury limited speed of automobiles on the bridge to twelve miles per hour. The impact of the car was of such violence it broke both of plaintiff's legs, broke the connecting rod between the lamps of the automobile, bent the bracket of the left-hand lamp and forced the lamp backward so the front of it was nearly across the external line of the radiator. As the car was stopped it left skid marks on the dry pavement 12 or 14 feet long. The result is, the manner in which plaintiff reached the place where he was struck bore no relation to the proximate cause of the injury, and the cases cited by defendant holding a new trial should be granted when a verdict is based in part on a finding which was set aside, have no application.

Defendant says he was entitled to have the jury find the facts in accordance with the weight of the evidence, and the 7th finding discloses such perverseness on the part of the jury, all the findings and the general verdict should be set aside.

The clear preponderance of the evidence was, plaintiff did not leave the sidewalk in an ordinary walk. He admitted he started with a jump. He explained to the jury, however, that what he meant was, he threw his body forward as he went down off the sidewalk, and with that impetus may have run two or three steps, but he was not in reality running, and he walked the rest of the way to the place where he stopped. As already indicated, the verdict would not be affected if the finding were that plaintiff left the sidewalk with a jump and a run. He did not start to race across the roadway in front of defendant's car when, as defendant said, the car was only three feet from the sidewalk and only eight or ten feet south of plaintiff. The district court has approved all other findings, fourteen in number, and the general verdict, as returned in due sincerity and according to the right of the case. The worst that can be said is, the jury made a clear mistake in weighing the evidence upon an issue which was not of vital consequence; and the result is, this court is not in position to declare the jury was guilty of misconduct or was influenced by passion or prejudice.

Decision of other questions presented by defendant requires nothing but application of well-known rules observed by this court in consideration of cases appealed to it.

The judgment of the district court is affirmed.